UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CARL M.,[1]

      Plaintiff,

                              **Case No. 1:21-cv-1124**

     v.                        **Magistrate Judge Norah McCann King**

KILOLO KIJAKAZI,
**Acting Commissioner of Social Security,**

      Defendant.

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Carl M. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On May 23, 2018, Plaintiff filed his application for benefits, alleging that he has been disabled since August 31, 2017. R. 86, 97, 161−67. The application was denied initially and

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

upon reconsideration. R. 98–102, 106–08. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 109–10. Administrative Law Judge ("ALJ") John Campbell held a hearing on January 13, 2020, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 39–74. In a decision dated March 2, 2020, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from August 31, 2017, Plaintiff's alleged disability onset date, through the date of that decision. R. 10–25. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on November 24, 2020. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On June 2, 2021, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 9.[3] On June 3, 2021, the case was reassigned to the undersigned. ECF No. 10. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

Under the substantial-evidence standard, a court looks to an existing administrative

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account

3

whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent

such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

### B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the

Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do

so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.   ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 46 years old on his alleged disability onset date. R. 23. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between August 31, 2017, his alleged disability onset date, and the date of the decision. R. 12.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: lumbar degenerative disc disease, status post anterior cruciate ligament ("ACL") repair, status post lumbar decompression/laminectomy, spondylosis of the lumbar spine, and radiculopathy. *Id*. The ALJ also found that the following impairments were not severe: hyperlipidemia, methicillin-resistant staphylococcus aureus ("MRSA") / methicillin-sensitive staphylococcus aureus ("MSSA") infection, spurring of the right upper extremity acromioclavicular joint, right renal cyst, urinary retention, and abdominal pain. R. 13−15.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 15−16.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 16−23. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a construction worker. R. 23.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs−*e.g.*, approximately 5,100 jobs as a final assembler; approximately 14,400 jobs as an order clerk; approximately 32,100 jobs as a charge account clerk−existed in the national economy and could be performed by Plaintiff. R. 24. The ALJ therefore concluded

that Plaintiff was not disabled within the meaning of the Social Security Act from August 31, 2017, his alleged disability onset date, through the date of the decision. R. 25.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 18. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 19.

## IV.    RELEVANT MEDICAL EVIDENCE

On November 30, 2018, Alexander Vaccaro, M.D., Plaintiff's treating physician, completed a seven-page, check-the-box and fill-in-the-blank form entitled, "Spinal Impairment Questionnaire." R. 395–401. Dr. Vaccaro indicated that he had treated Plaintiff every six months since October 24, 2017, and had most recently treated him on November 21, 2018. R. 395. Dr. Vaccaro diagnosed spondylolisthesis and spinal stenosis of the lumbar region without neurogenic claudication. *Id*. Dr. Vaccaro stated that Plaintiff was "recovering from lumbar spine procedures" and was "restricted from all work activities[.]" *Id*. In identifying the positive clinical findings that demonstrate and/or support his diagnoses, Dr. Vaccaro responded as follows: limited range of motion in the lumbar region at L4/5 and L5/S1 levels; severe muscle spasms in the lumbar region; sensory loss in the lumbar spine; reflex changes; increased bilateral lower extremity muscle weakness; abnormal gait; and bilateral positive straight leg raising test. R. 395–96. Dr. Vaccaro also referred to an MRI of the lumbar spine that revealed severe foraminal stenosis at L5/S1 with advanced degenerative changes at that level and at L4/5, as well as x-rays that

8

showed unstable isthmic spondylolisthesis at the L5/S1 level. R. 396−97. According to Dr. Vaccaro, Plaintiff's symptoms and functional limitations were reasonably consistent with the physical impairments described in the evaluation. R. 397. According to Dr. Vaccaro, Plaintiff experienced worsening pain of the lower extremity and lumbar spine and weakness due to unstable isthmic spondylolisthesis and disk degeneration disease. *Id*. Plaintiff's pain is constant or daily and worsened by work activities and with sleeping. *Id*. Dr. Vaccaro identified Plaintiff's job as a laborer to be the precipitating factor leading to pain. *Id*. Plaintiff's pain was not completely alleviated with medication without unacceptable side effects. R. 398.

Dr. Vaccaro went on to estimate Plaintiff's RFC if Plaintiff were placed in a normal competitive five day a week work environment on a sustained basis as follows: In an eight-hour day, Plaintiff could sit for zero hours; stand for zero hours; and never lift or carry any weight. R. 398−99. Plaintiff must not sit continuously in a work setting. R. 398. Dr. Vaccaro also noted that the following limitations affected Plaintiff's ability to work at a regular job on a sustained basis: his need to avoid wetness, temperature extremes, humidity, heights, pushing, pulling, kneeling, bending, and  stooping. R. 400−01.

In addressing Plaintiff's treatment, Dr. Vaccaro identified Plaintiff's medication and side effects as follows: Clindamycin (increase bowel movements); Oxycodone (drowsiness); Flexeril (fatigue); and Bactrim DS. R. 399. Dr. Vaccaro noted that he had substituted medications in an attempt to lower Plaintiff's symptomatology or relieve side effects, including using physical therapy and wound irrigation and debridement. *Id*.

Dr. Vaccaro indicated that Plaintiff's experience of pain or other symptoms was severe enough to constantly interfere with his attention and concentration. *Id*. Plaintiff's impairments were ongoing and Dr. Vaccaro expected that they would last at least twelve months. *Id*. He

denied that emotional factors contributed to the severity of Plaintiff's symptoms and functional limitations and he denied that Plaintiff was a malingerer. R. 399–400. According to Dr. Vaccaro, Plaintiff was incapable of tolerating even low work stress as he underwent "two major surgeries and unable to work due to job tasks / and activities." R. 400. The doctor opined that Plaintiff was "unable to work." *Id.* Plaintiff's condition interfered with his ability to keep the neck in a constant position, *e.g.*, looking at a computer screen or looking down at a desk and he could  not hold a full-time competitive job that requires that activity on a sustained basis. *Id.* Dr. Vaccaro opined that Plaintiff's impairments were likely to produce "good days" and "bad days" and, on average, Plaintiff was likely to be absent more than three times a month as a result of his impairments or treatment. *Id.* Finally, Dr. Vaccaro stated that "[d]ue to the nature of this patient's job, Dr. Caccaro is not clearing patient for work. Patient is unable to return to work." R. 401.

## V.    DISCUSSION

### A.    RFC and Opinion Evidence

Plaintiff first argues that substantial evidence does not support the ALJ's RFC determination because the ALJ failed to properly consider the Dr. Vaccaro's opinions. This Court disagrees.

A claimant's RFC is the most that the claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, it is the administrative law judge who is charged with determining the claimant's RFC. 20 C.F.R. § 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to

10

consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ

need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554

(3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ

has discretion to choose whether to include "a limitation [that] is supported by medical evidence,

but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ

cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also

has the discretion to include a limitation that is not supported by any medical evidence if the ALJ

finds the impairment otherwise credible").

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to

perform a limited range of sedentary work, as follows:

> After careful consideration of the entire record, the undersigned finds that the
> claimant has the residual functional capacity to perform sedentary work as defined
> in 20 CFR 404.1567(a) except that the claimant can occasionally climb ramps and
> stairs, balance, stoop, kneel, crouch and crawl but never climb ropes, ladders or
> scaffolds, bilateral upper extremity frequent fingering, handling and reaching to the
> front and side and occasionally overhead. He should avoid concentrated exposure
> to vibration, extreme heat and cold, wetness and humidity. He does not work at
> unprotected heights, near exposed moving mechanical parts or with dangerous
> heavy machinery or equipment such as that, which cuts, tears, crushes, punctures
> or shears in its operations.

R. 16–17. In making this determination, the ALJ detailed years of record evidence regarding

Plaintiff's lumbar impairments, including, *inter alia*, a September 2017 MRI of Plaintiff's

lumbar spine that revealed a mild diffuse disc bulge with left and right paracentral herniations,

normal facets and mild central canal stenosis and mild lateral recess impingement bilaterally at

L1-2; at L4-5, a diffuse disc bulge with superimposed right and left paracentral herniations, left

greater than right; a central annular tear; and at L5-S1, a diffuse disc bulge slightly eccentric to

the left, uncovering of the disc due to anterolisthesis from a bilateral L5 pars defect and

significant bilateral foraminal stenosis with impingement of the exiting L5 nerve roots

bilaterally; normal gait during a September 2017 examination; physical therapy for the lumbar spine on fifteen occasions between October 4, 2017, and November 13, 2017, during which his pain at best measured a 2 out of 10 and during which he could sit for 30 minutes and walk for 15 minutes; Dr. Vaccaro's October 2017 examination that reflected that, while Plaintiff had reduced strength in his extensor hallucis longus and a reduced range of motion, his heel walk, toe walk and tandem gait were normal; Plaintiff's anterior lumbar interbody fusion at L4-5 and L5-S1 with femoral ring allograft, bone morphogenetic protein type 2 followed by a posterior decompression procedure L5-S1 with fusion from L4 to S1 with pedicular fixation, local bone graft and demineralized bone matrix; Plaintiff's January 2018 report that his lower extremity pain was improving significantly and that, while he had some back discomfort, he denied weakness, numbness or tingling in the lower extremities and he exhibited full strength in his lower extremity; Plaintiff's February 2018 report that he was ambulating with no further numbness in the legs and an examination at that time revealed a stable gait and normal motor activity; the fact that, on March 20, 2018, Plaintiff's incisions were well healed and he was neurologically unchanged; his imaging showed excellent alignment of his fusion and he had minimal pain compared to his pre-operative status; when Plaintiff began physical therapy in March 2018, he rated his pain as 2 out of 10; while he had limited active trunk mobility, moderate tightness of most hip group muscles, and his impairments hindered his ability to bend forward, lift, perform transfers, sit and walk, he later reported relief from his symptoms with physical therapy; the fact that Plaintiff experienced a non-healing incision of his back with no drainage in April 2018 and underwent irrigation and debridement of the wound in May 2018, at which time an imaging study revealed a posterior lumbar spinal fusion at L4-5 and L5-S1 with two intervening allografts at those levels; during a consultative examination performed by

12

Ronald Bagner, M.D., on September 21, 2018, Plaintiff got on and off the examination table without difficulty and, while Plaintiff had a reduced range of motion in the lumbar spine with pain on range of motion, he could ambulate at a reasonable pace, had no pain on his straight leg raise test, and had no motor or sensory abnormalities in the lower extremities with no effusion or tenderness; the fact that, during an examination in November 2018, Plaintiff had no complaints except some mild back pain when he sat for too long and became tired when he walked long distances but he was otherwise well appearing, had full strength in his lower extremities, and his incisions were well healed (at that time, Plaintiff was out of work due to his injury as his prior position involved labor intensive highway work); the fact that, during an April 2019 examination, Plaintiff reported experiencing one month of pain in his low back and buttock, that his pain increased with activity, but he admitted that he had not taken pain medication and his imaging showed excellent progression of the fusion, he could heel and toe walk and had a tandem gait, he exhibited a full range of motion in the spine, full strength in his lower extremities, intact sensation and reflexes, no pain with log rolling his hips, no costovertebral tenderness, and his straight leg raise test was negative; he was diagnosed with lumbar radiculopathy and was referred to physical therapy and an X-ray and was advised to take Tylenol as needed; Plaintiff began physical therapy in April 2019, during which he rated his pain as between 3 and 5 out of 10 with limited standing and walking tolerance, his ability to lift, sit/stand and bend forward were painful and he exhibited reduced strength in the lower extremities. R. 17–20. The ALJ also considered evidence relating to Plaintiff's status post ACL repair, including, *inter alia*, a consultative examination in September 2018, during which Plaintiff had full strength in his lower extremities, ambulated at a reasonable pace, and could squat; an imaging study on the same date suggested a patella injury. R. 20. The ALJ also found that "the

13

objective evidence fails to document the presence of any impairment or combination of impairments that could reasonably be expected to result in pain or other symptoms of such a severity or frequency as to preclude the claimant's residual functional capacity as assigned." R. 22. In the view of this Court, this record contains substantial evidence to support the ALJ's RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

Plaintiff challenges this determination, arguing that the ALJ failed to properly consider Dr. Vaccaro's opinions. *Plaintiff's Brief*, ECF No. 18, pp. 10–17. This Court disagrees. An ALJ must evaluate all record evidence in making a disability determination, *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704, and the ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review," *Cotter*, 642 F.2d at 704–05. Specifically, an ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id.* at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[4] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).

The regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 404.1520c(a). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. § 404.1520c(c)(1).  As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and

---

[4] As previously noted, Plaintiff's claim was filed on May 23, 2018.

nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. § 404.1520c(c)(2).

The applicable regulations further require the ALJ to articulate his "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id.* at § 404.1520c(b). "Specifically, the ALJ must explain how he considered the 'supportability' and 'consistency' factors for a medical source's opinion. . . . The ALJ may—but is not required to—explain how he [or she] considered the remaining factors." *Michelle K. v. Comm'r of Soc. Sec*., No. 1:19-CV-01567, 2021 WL 1044262, at *4 (W.D.N.Y. Mar. 19, 2021) (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)).

In the present case, in finding at step four that Plaintiff was able to perform a limited range of sedentary work, the ALJ found, *inter alia*, that Dr. Vaccaro's opinions were "partially persuasive[,]" providing the following narrative explanation:

> Alexander Vaccaro, M.D., concluded on November 30, 2018 that the claimant could sit for 0 hours, stand for 0 hours in an 8 hour work day, he could never lift any weight (Exhibit 13F). His pain and other symptoms would constantly interfere with his attention and concentration. He was incapable of low stress work. He could not keep his neck in a constant position, he could not perform full time competitive work requiring activity on a sustained basis, and he would be absent more than three times a month. He was to avoid wetness, temperature extremes, humidity, heights, pushing, pulling, kneeling, bending and stooping.
>
> The undersigned finds the opinion of Dr. Vaccaro to be partially persuasive (Exhibit 13F). The undersigned finds that his opinion that the claimant should avoid wetness, temperature extremes and humidity to be persuasive. The undersigned finds that Dr. Vaccaro's opinion is supported by the notes that he placed on the form containing the opinion. The undersigned finds that this portion of the opinion is consistent with the medical record as a whole as his limitation involving environmental elements considers the degenerative joint disease aspects of his impairments. The undersigned finds that the remainder of his opinion is not persuasive. The undersigned finds that Dr. Vaccaro's opinion is supported by the

notes that he placed on the form containing the opinion. However, his opinion was not supported by his most recent examination's treatment notes dated November 21, 2018 when the claimant was noted to have mild back pain when sitting too long and he was tired when walking long distances (Exhibit 15F). He had no new complaints, his lower extremity strength was full and he was well appearing. The claimant's presentation on November 21, 2018 does not support the extent and severity of the claimant's limitations provided by Dr. Vaccaro. Further, his limitations are inconsistent with other medical evidence of record. Dr. Bagner's [consultative] examination, which occurred two months prior to Dr. Vaccaro's opinion, revealed normal functional findings aside from a reduce range of motion in the lumbar spine (Exhibit 12F). Ms. Rivard's examination four months after the opinion reveals normal findings with a full range of motion in the spine (Exhibit 15F). These findings are not consistent with Dr. Vaccaro's conclusions. Further, the claimant had not undergone a second MRI or EMG and nerve conduction study between Dr. Bagner's examination and Ms. Rivard's examination to support new pathology causing such limitations.

R. 22−23. The Court finds no error with the ALJ's reasoning in this regard. *See* 20 C.F.R. § 404.1520c(c)(1), (c)(2) (addressing the supportability and consistency factors when considering medical opinions).

Plaintiff, however, raises a number of challenges to the ALJ's consideration of Dr. Vaccaro's opinion. *Plaintiff's Brief*, ECF No. 18, pp. 10−17. Plaintiff first contends that the ALJ failed to properly discuss the supportability and consistency of Dr. Vaccaro's opinion as required under the regulatory framework. *See id.* at 10−15. This Court disagrees. As detailed above, the ALJ explained that Dr. Vaccaro's examination notes from November 21, 2018−which reflect that, although Plaintiff complained of mild back pain and tiredness after walking long distances, he had full lower extremity strength and was well appearing−did not support that physician's extreme limitations. R. 23. The ALJ also explained that these extreme limitations were inconsistent with other medical evidence, including normal functional findings−aside from a reduced range of motion in the lumbar spine−two months before Dr. Vaccaro issued his opinion and normal findings with a full range of motion in the spine four months after that opinion was issued. *Id*. The ALJ also noted that Plaintiff did not undergo a second MRI or EMG and nerve

17

conduction study during this time to support a new pathology causing these limitations. *Id.* In other words, the ALJ specifically considered the supportability and consistency factors and explained why Dr. Vaccaro's treatment notes and other evidence in the record rendered his opinions regarding Plaintiff's limitations as unpersuasive. *See id.* To the extent that Plaintiff urges this Court to find that the ALJ's consideration in this regard "is not sufficient to outweigh" Dr. Vaccaro's treating physician opinions, *Plaintiff's Brief*, ECF No. 18, p. 12, this Court has already explained that the new regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (advising, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Accordingly, based on this record, the Court cannot find that the ALJ failed to properly consider the supportability and consistency of Dr. Vaccaro's opinions in accordance with the governing regulations. *See* 20 C.F.R. § 404.1520c(c)(1)−(2); *see also Crossley v. Kijakazi*, No. 3:20-CV-02298, 2021 WL 6197783, at *11 (M.D. Pa. Dec. 31, 2021) (finding that the ALJ properly evaluated opinions regarding exertional limitations where the ALJ considered, *inter alia*, physical examinations that routinely noted the claimant to have normal range of motion, no tenderness, normal strength, no tremor, no cranial nerve deficit, and normal gait and coordination); *Aponte v. Kijakazi*, No. CV 20-5008, 2021 WL 4963545, at *7 (E.D. Pa. Oct. 25, 2021) (finding that substantial evidence supported the ALJ's finding that a treating opinion was not persuasive under 20 C.F.R. § 404.1520c because it was inconsistent with, *inter alia*, mild findings on "multiple physical examinations" and mild radiographic findings); *Debevits v. Saul*, No. CV 20-600, 2021 WL 2590140, at *4 (W.D. Pa. June 24, 2021) (finding that the ALJ

18

"appropriately assessed Dr. Kellis' medical opinion in light of these standards" under 20 C.F.R. §§ 404.1520c, 416.920c where the ALJ concluded that a physician's opinion was not persuasive because "the limitations [the physician] espoused were not consistent with or supported by other evidence of record" such as, *inter alia*, the treatment records, for instance, indicated a greater ability to walk, lift, and stand"); *Zajac v. Comm'r of Soc. Sec.*, No. 1:20-CV-135, 2021 WL 1169466, at *4 (W.D. Mich. Mar. 29, 2021) (finding that the ALJ properly analyzed an opinion under §§ 404.1520c(c)(1)−(2) and 416.920c(c)(1)−(2) where the ALJ "articulated proper bases for finding the opinion unpersuasive, namely, consistently normal physical and mental examination findings, and she supported her reasons with citations to specific evidence in the record").

Plaintiff nevertheless insists that the ALJ erred by failing to properly consider evidence that he believes is consistent with Dr. Vaccaro's extreme limitations. *Plaintiff's Brief*, ECF No. 18, pp. 13−14. However, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Messina v. Comm'r of Soc. Sec.*, No. 20-1884, 2021 WL 422444, at *3 (3d Cir. Feb. 8, 2021) ("Yet we cannot reweigh the evidence or make our own factual determinations."); *Chandler*, 667 F.3d at 359 ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard]."); *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).

Plaintiff also contends that the ALJ improperly failed to consider the regulatory factors when assessing Dr. Vaccaro's treating opinions. *Plaintiff's Brief*, ECF No. 18, p. 15. This Court disagrees. For the reasons already discussed, the ALJ properly considered the supportability and consistency of this opinion. R. 23; 20 C.F.R. § 404.1520c(1)−(2). Although the ALJ did not expressly discuss Dr. Vaccaro's specialty in orthopedic surgery and the length of his treating relationship with Plaintiff, the ALJ specifically discussed Dr. Vaccaro's opinion and treatment records, R. 18, 22−23 (citing, *inter alia*, Exhibit 3F, R. 276−79; Exhibit 13F, R. 395 − 402), which reflect, *inter alia*, that Dr. Vaccaro practices with Rothman Orthopaedics as a spine specialist as well as how long he treated Plaintiff. In any event, any failure by the ALJ to expressly discuss these factors does not require remand where, as here, a comprehensive review of the record provides substantial support for the ALJ's evaluation of this treating opinion. *See* 20 C.F.R. § 404.1520c(b)(2) (explaining that the factors of supportability and consistency "are the most important factors" and that an ALJ "may, but [is] not required to, explain how" he considered other regulatory factors, including relationship with the claimant, specialization, and other factors); *Jarrett v. Kijakazi*, No. CV 21-1607, 2021 WL 6136936, at *5 (E.D. Pa. Dec. 29, 2021) (finding that the ALJ "satisfied" his regulatory duties when he "explained that the treatment records were only partly consistent with and supportive of" the medical opinion because an ALJ "must only explicitly discuss the two most important factors: consistency and supportability").

Plaintiff also complains that the ALJ failed to consider every 12-month period during the relevant time period. *Plaintiff's Brief*, ECF No. 18, p. 14. Plaintiff's argument is not well taken. As a preliminary matter, district courts in this circuit−including this Court−have rejected this argument where, as in the present case, the claimant has not requested at the administrative level

a "closed period" of disability determination, "submitted medical records spanning multiple years[,]" and "had argued disability since the pertinent onset date." *Demaske v. Berryhill*, No. 18-18, 2018 WL 6243221, at *2 (W.D. Pa. Nov. 29, 2018) (citing *Maslowski v. Colvin*, No. 15-1833, 2016 WL 1259967 (D.N.J. Mar. 31, 2016)); *see also Dilwara K. v. Comm'r of Soc. Sec.*, No. CV 20-1557 (ES), 2022 WL 2357428, at *2 (D.N.J. June 30, 2022) ("This argument was not made to the ALJ, and it therefore is not a basis to disturb the ALJ's decision. . . . Plaintiff did not request a closed period of disability at any point prior to the ALJ's 2018 decision. . . . And '[a] claimant's failure to request consideration of a closed period of disability precludes the claimant from arguing on appeal to the district court that the ALJ erred by failing to consider the same.'") (citations omitted); *Ward v. Kijakazi*, No. CV 20-1315, 2021 WL 3037711, at *2 (W.D. Pa. July 19, 2021) ("I find that the ALJ did not err in failing to explicitly address a closed period of disability when that request was not made before the ALJ.") (citations omitted). In any event, as previously discussed, the ALJ already explained through citation to the medical record why Plaintiff was not disabled during the relevant period. R. 17−23. In insisting that he was disabled in a given twelve-month period, Plaintiff simply relies on his own reports of pain during examinations. *Plaintiff's Brief*, ECF No. 18, p. 14. However, the mere memorialization of a claimant's subjective complaints in a medical record does not transform those complaints into objective findings or a medical opinion. *Hatton*, 131 F. App'x at 879 ("[A] medical source does not transform the claimant's subjective complaints into objective findings simply by recording them in his narrative report[.]") (summarizing *Craig v. Chater*, 76 F.3d 585, 590 n. 2 (4th Cir. 1996)); *Morris v. Barnhart*, 78 F. App'x 820, 824–25 (3d Cir. 2003) ("[T]he mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion.") (citations omitted); *Famularo v. Comm'r of Soc. Sec.*, No. CV

21

20-1655, 2021 WL 613832, at *7 (D.N.J. Feb. 17, 2021) ("[A] a claimant's own subjective

report about her symptoms[] does not become a medical opinion by virtue of being recorded in

treatment notes.") (citations omitted). Notably, for the reasons discussed in detail below, the ALJ

properly discounted Plaintiff's subjective complaints.

Finally, Plaintiff complains that the ALJ failed to clearly explain how he determined the

functional limitations in the RFC: "Absent a reference to any medical findings or even

persuasive non-medical findings supporting the restricted sedentary RFC found by the ALJ in

this case, the only logical conclusion is that the ALJ impermissibly interpreted the medical data

into the RFC found for [Plaintiff]. This is strictly disallowed in the Third Circuit." *Plaintiff's*

*Brief*, ECF No. 18, p. 16 (citing, *inter alia*, *Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986)).

Plaintiff's argument is not well taken. As a preliminary matter,

> *Doak* does not stand for the proposition that an ALJ cannot make an RFC
> determination in the absence of a medical opinion reaching the same conclusion.
> Such a rule would be inconsistent the Third Circuit's express holding that "[t]he
> ALJ—not treating or examining physicians or State agency consultants—must
> make the ultimate disability and RFC determinations."[] Rather, the Court in *Doak*
> held that the ALJ's opinion was unsupported because nothing in the record, which
> consisted of testimony and three medical reports, justified the ALJ's conclusion.
> Contrary to Plaintiff's contention, the more recent, nonprecedential Third Circuit
> and district court opinions on which the R & R relies clarify, rather than contradict,
> *Doak*'s holding, and make clear that an ALJ is not restricted to adopting the
> conclusions of a medical opinion in making an RFC determination.

*Cleinow v. Berryhill*, 311 F. Supp. 3d 683, 685 (E.D. Pa. 2018) (footnotes omitted); *see also*

*Chandler*, 667 F.3d at 362 (rejecting the claimant's argument that the ALJ applied "his own lay

opinion" regarding medical evidence when crafting the RFC and stating that "the ALJ is not

precluded from reaching RFC determinations without outside medical expert review of each fact

incorporated into the decision"); *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006)

("There is no legal requirement that a physician have made the particular findings that an ALJ

adopts in the course of determining an RFC. Surveying the medical evidence to craft an RFC is part of the ALJ's duties."). As previously discussed, the ALJ sufficiently explained his consideration of the opinion evidence as well as the medical and other evidence as a whole when crafting the RFC. R. 17–23.[5]

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the record, as does his consideration of Dr. Vaccaro's opinions.

## B.    Subjective Statements

Plaintiff also challenges the ALJ's consideration of his subjective complaints. *Plaintiff's Brief*, ECF No. 18, pp. 17–20. Plaintiff's arguments are not well taken.

"Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)).  Instead, objective medical evidence must corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)).  Specifically, an ALJ must follow a two-step process in evaluating a claimant's subjective complaints. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id*. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the

---

[5] For this reason, Plaintiff's reliance on *Shannon v. Comm'r of Soc. Sec.*, No. 15-cv-6480, 2016 WL 5133741, at *14 (D. N.J. Sept. 20, 2016), is unavailing as that case is inapposite. *See id.* ("[T]he ALJ provided no medical or other evidence to support the conclusions that Plaintiff can sit for up to six hours per day with breaks, can handle low stress work, and would only be off task five percent of the workday."

intensity and persistence of those symptoms to determine the extent to which the symptoms limit

an individual's ability to perform work-related activities[.]" *Id.*; *see also Hartranft v. Apfel*, 181

F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or

symptom and the extent to which it affects the ability to work] obviously requires the ALJ to

determine the extent to which a claimant is accurately stating the degree of pain or the extent to

which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this

evaluation, an ALJ must consider the objective medical evidence as well as other evidence

relevant to a claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following

factors to consider: daily activities; the location, duration, frequency, and intensity of pain or

other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side

effects of any medication you take or have taken to alleviate pain or other symptoms; treatment,

other than medication, currently received or have received for relief of pain or other symptoms;

any measures currently used or have used to relieve pain or other symptoms; and other factors

concerning your functional limitations and restrictions due to pain or other symptoms). Finally,

an "ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v.*

*Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported

by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. §

416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A]

reviewing court typically defers to an ALJ's credibility determination so long as there is a

sufficient basis for the ALJ's decision to discredit a witness.").[6]

---

[6] SSR 16-3p superseded SSR 96-7p on March 26, 2016, and eliminated the use of the term
"credibility." SSR 16-3p. However, "while SSR 16-3P clarifies that adjudicators should not
make statements about an individual's truthfulness, the overarching task of assessing whether an
individual's statements are consistent with other record evidence remains the same." *Levyash v.*
*Colvin*, No. CV 16-2189, 2018 WL 1559769, at *8 (D.N.J. Mar. 30, 2018).

Here, the ALJ followed this two-step evaluation process. The ALJ specifically considered Plaintiff's subjective complaints. R. 17, 21–22. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 17. As previously discussed, the ALJ detailed years of medical evidence and record testimony to support his findings. R. 17–20. The ALJ specifically found that Plaintiff's "reports of pain are not consistent with the medical record as a whole[,]" explaining as follows:

> In this instance, a number of the claimant's impairments could reasonably cause some symptomatology. However, the pivotal question is not whether such symptoms exist, but whether those symptoms occur with such frequency, duration or severity as to reduce the claimant's residual functional capacity or to preclude all work activity on a continuing and regular basis. In this case, a careful review of the record does not document sufficient objective medical evidence to substantiate the severity of the pain and degree of functional limitations alleged by the claimant.
>
> As to the claimant's lumbar pain, the undersigned notes that the claimant underwent a fusion at L4-5 and L5-S1 on January 10, 2018 (Exhibit 4F). Prior to that time, he engaged in conservative treatment including physical therapy, chiropractic treatment, and treatment with medications (Exhibits 2F, 7F and 16F). Following his surgery, the claimant experienced some issues with infections at the surgical site, which complicated his recovery through May 2018 (Exhibit 11F). However, his pain decreased significantly following the surgery as he rated his pain at 2 out of 10. Dr. Bagner's [consultative] examination in September 2018 revealed that he had a reduced range of motion in the lumbar spine but no other functional issues (Exhibit 12F). He informed Mr. Mageer in November 2018 that he had no complaints other than experiencing some mild back pain when he sat for too long (Exhibit 15F). Mr. Mageer noted that the claimant was not working because his previous position involved labor intensive highway work, a job ruled out by his residual functional capacity as assigned.
>
> The claimant was referred back to physical therapy in April 2019 (Exhibits 15F and 17F). The claimant complained about moderate pain (Exhibit 17F). During his examination in early April 2019, he exhibited full functioning but was diagnosed with lumbar radiculopathy secondary to his pain (Exhibit 15F). At that time, he was taking no medication for his radicular symptoms.

25

He has not demonstrated that he would be refractory to Gabapentin or injections. Further, he did not undergo an MRI to establish greater pathology than had been present previously. He has not undergone an EMG and nerve conduction study to support the extent and severity of the pain he alleges. The undersigned considered these findings in assigning work at a sedentary exertional level with additional postural and environmental limitations.

As to the claimant's left leg pain, the undersigned notes that the claimant sought no treatment for this impairment during the relevant period. Instead, he informed Dr. Bagner that he could not put weight on his left knee or he would fall (Exhibit 12F). There is no evidence that he informed a doctor during the relevant period about the functional issues associated with his left leg. However, despite his statements to Dr. Bagner, he maintained full strength in the left leg, ambulated at a reasonable pace and he could squat. He was unable to walk on his heels or toes. His imaging study revealed a possible patella tendon injury but noted minimal effusion. The undersigned considered these findings in assigning work at a sedentary exertional level with additional postural and environmental limitations.

The undersigned finds that the claimant experiences some pain and discomfort from his severe impairments; however, not to the extent maintained by the claimant. Instead, the undersigned concludes that the claimant is able to perform work related activities at a sedentary exertional level with additional postural and environmental limitations.

R. 21–22. In the view of this Court, this record provides substantial support for the ALJ's

decision to discount Plaintiff's subjective statements as inconsistent with the record evidence.

*Van Horn*, 717 F.2d at 873; *Miller*, 719 F. App'x at 134; *Izzo*, 186 F. App'x at 286.

Plaintiff, however, challenges the ALJ's finding, arguing that "the ALJ failed to consider

if he was disabled for at least a 12 month period given [Plaintiff's] severe back impairment with

resulting lengthy recovery due to complications [following surgery]." *Plaintiff's Brief*, ECF No.

18, pp. 18–19. For the reasons already discussed, Plaintiff's argument that the ALJ failed to

consider a closed twelve-month period of disability is unavailing. *See also Dilwara K.*, 2022 WL

2357428, at *2; *Ward*, 2021 WL 3037711, at *2; *Demaske*, 2018 WL 6243221, at *2;

*Maslowski*, 2016 WL 1259967, at *17–18.

Plaintiff also complains that the ALJ "erred by criticizing [Plaintiff] for not taking any prescription pain medications for his conditions without considering Plaintiff's testimony that he has been unable to take opioid pain medications due to problems with addiction (Tr. 54)." *Plaintiff's Brief*, ECF No. 18, p. 19. Plaintiff contends that "[t]he lack of prescription narcotic medications in this case is not an indication of lack of severity but instead the concerns over such treatment resulting in a relapse of Plaintiff's addiction. Therefore, the ALJ's suggestion that the lack of such treatment indicated [Plaintiff's] pain is not as severe as alleged is misplaced." *Id.* at 19−20. Perhaps tellingly, Plaintiff did not cite to any part of the hearing decision for the ALJ's purported reasoning in this regard and he has mischaracterized the ALJ's decision. The ALJ simply noted that, in April 2019, Plaintiff's treating source indicated that Plaintiff was not taking any medication for pain. R. 21 ("During his examination in early April 2019, he exhibited full functioning but was diagnosed with lumbar radiculopathy secondary to his pain (Exhibit 15F). At that time, *he was taking no medication for his radicular symptoms*.") (emphasis added); R. 418−19 (reflecting examination on April 1, 2019, which noted, *inter alia*, that Plaintiff "*has not taken any medication for the pain*" and recommending taking "Tylenol as needed for any soreness") (emphasis added). The ALJ did not discount Plaintiff's subjective complaints because Plaintiff was not taking opioid medication.

For all these reasons, the Court concludes that the ALJ sufficiently explained his reasoning in assessing Plaintiff's subjective complaints, and the ALJ's findings in this regard are supported by substantial evidence in the record and are therefore entitled to this Court's deference. *See* SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn v.*

*Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)); *Davis v. Comm'r Soc. Sec.*, 105 F. App'x 319, 322 (3d Cir. 2004) (finding that the ALJ sufficiently evaluated the plaintiff's testimony where "the ALJ devoted two pages to a discussion of claimant's subjective complaints and cited Claimant's daily activities and objective medical reports"). Accordingly, the ALJ's assessment of Plaintiff's subjective complaints cannot serve as a basis for remand of this action. *Id.*

## VI.     CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  September 29, 2022              _____*s/Norah McCann King*_____
                                                          NORAH McCANN KING
                                                          UNITED STATES MAGISTRATE JUDGE